And our second case this morning is Bohanon v. City of Indianapolis. All right I see Mr. Oakley and Mr. Upchurch. Can you hear me? We have a thumbs up from Mr. Upchurch and okay Mr. Oakley can you hear me? Yes? Yes. All right good then you may proceed. Okay thank you Your Honors and may it please the court. My name is Robert Oakley. I am the counsel for the appellant and plaintiff below Mr. Bradford Bohanon. This court, this case has come up on appeal following a renewal of a post trial motion for post jury verdict based on a lack of sufficiency of evidence with respect to the plaintiff's Monell claim regarding the the interplay of policies with respect to use of force and taking action while off duty after consuming alcohol by the police officers. The incident involved a August 7th 2014 incident wherein appellant Bradford Bohanon had been involved in an argument with a with a bartender in the presence of two off-duty officers Rieger and Serban. The two off-duty officers prior to the incident beginning had acknowledged they had been consuming multiple beers as well as at least one shot so they were had alcohol in their blood at the time of the incident. It occurred the first began as officer Serban intervened believing giving statements that he believed that the situation was going to escalate. Officer Serban displayed his badge, identified himself as a police officer. There was then a physical altercation between officer Serban and and plaintiff Bohanon at which time officer Rieger believed that he needed to intervene to injury to either the officer Serban or or Mr. Bohanon at which time the situation escalated and ultimately resulted in a excessive use of force including the a chokehold being applied to Mr. Bohanon and the two officers then dragging Mr. Bohanon out of the bar face first into the into the parking area. With respect to the actual policies at issue here and in the court's decision the jury was presented with a great amount of evidence and discussion regarding the interplay of three of the major policies that are at issue in this case. The first is a general order 1.30 of the Indianapolis Metropolitan Police Department which requires that force be reasonable given the facts and it further provides extensive rules and guidelines on how the officers should deal with specific situations. However it has been our position throughout this litigation that the safeguards that the city needs to place and put in place need to be at the level of where they first take action after consuming alcohol when that officer duty officer can become involved as we believe that there's a highly predictable chance that these officers will exceed the force requirement the requirements for use of force given the fact that they're under the influence of alcohol and we believe this is in line with Daniel V. Cook with respect to gaps and expressed policies and and I believe the jury was presented with extensive evidence that would support that there was a highly predictable likelihood of a constitutional violation of this nature and that the city's lack of guidance and lack of specific and strict instruction given inside of the interplay between the off-duty action and the alcohol consumption was actually a pattern of deliberate indifference by the city itself that can be seen within that policy and that evidence suggests as much. Mr. Oakley there's no evidence that these policies caused constitutional violations previous to this incident? There we did not have a pattern of private previous incidents however we do believe like the trial court agreed in in its summary judgment motion and at the initial motion for judgment of Mr. Oakley that that's that's not relevant we're post trial here so whatever the district judge said in denying the summary judgment motion just falls out of the analysis so you could just answer my question was there any evidence presented of previous constitutional violations that were caused by this collection of policies regarding off-duty alcohol use? No your honor I believe that we would be relying on the case law with respect such as this and with respect to this being a situation where the the risk and the nature of the potential violations are so obvious in nature that a jury could reasonably infer without a prior pattern that that a constitutional violation would occur. What's the logic behind that theory? Well I believe that the logic would be on prior case in the prior pattern cases you would be saying that the prior pattern presents notice or you know actual knowledge by the city whereas in this case we believe that the idea that allowing an officer an off-duty officer to take police action and act under color of law while he has been consuming alcohol the the risk is obvious and apparent without the need for without the need the notice is there already in that if it is a straightforward and obvious risk even without a prior pattern. I guess if your honor believes I've answered that question then I'll continue. What I've heard is a generality. What we're talking about is excessive force and I guess your argument is that I'm having a hard time understanding the theory here I guess is my problem. What is the theory that it's highly obvious that off-duty officers would engage in excessive force under this set of policies? Well there's municipal fault and causation. Okay I think that can be highlighted through some of the evidence that was given that that establishes this pattern that I speak of. You just told me there is no pattern so we're not in that. No I mean there's a pattern within the policy but not a pattern of prior incidents. That's a term of art in this legal domain and you've said that's not your theory so let's leave that aside. Okay okay well your this was discussed at great length with the policy making with the policy making expert that the city presented and the policy itself being general order 3.24 which is the alcohol policy which allows the the officers to take police action when they are when they are presented with what they believe to be even an that is then combined with the emergency situation definition which is set forth in general order 3.24. Mr. Oakley I think you're glossing the policy. The policy is actually a prohibition with a very narrow a very narrow and precisely stated exception that requires an extreme emergency to protect life and limb and what is it about that policy that is so glaringly obvious that it would produce constitutional violations that the city was on notice and had to do something about it in order to avoid more liability for what happened here which was two drunk officers intervening on their own initiative in an argument that erupted in the bar. The officers both presented testimony that they believed they had the duty to intervene and that they were within the policy and and I believe that stems from the fact that while the language of 3.24 this extreme emergency sounds like a high bar it is actually not. The the extreme emergency definition found in three in the prior in the prior general order defines extreme emergency as the as a basic prevention of bodily injury to an citizen not serious bodily injury. Some of the evidence presented through testimony by Sgt. McEwen was that bodily injury could be anything that causes an utterance of pain. So we're talking about a very low bar despite this language of extreme emergency the actual implementation and the way that the officers understood this policy set it much lower and given that fact combined with alcohol being being a factor here which which there was testimony that that clouds their the an officer's judgment or can cloud an officer's judgment that that that can very easily a lack of more strict stringent safeguards at that level can easily lead down the road and ultimately cause an officer to step forward and intervene because he believes he has a duty to do so and then once he starts to intervene if there is some resistance it leads to this situation where the the situation where the force used in the in the conflict between the officer and the individual he's trying to intervene with ends up escalating as a result of that. I believe I'm already into my rebuttal time your honor so I'll stop there. All right thank you. Mr. Upchurch. Thank you your honor and may it please the court. My name is Andrew Upchurch and I represent the city of Indianapolis and we respectfully request that the court affirm the district court's order on the post trial motions. The city respectfully contends that it is entitled to a judgment as a matter of law because the evidence that was presented during the jury trial was insufficient to show one that the city of Indianapolis was culpable in this situation and two that the city of Indianapolis caused this use of substance abuse. I would like to begin by acknowledging that I'm a member of the Indianapolis Police Department. I'm a member of the Indianapolis Police Department since 2014 at Mikey's Pub. There's been some discussion this morning about the substance abuse program which is Exhibit 7 General Order 3.24 and I would like to point out a very important aspect of General Order 3.24 which is the purpose of the policy and it clearly states that the purpose is to ensure that members are not under the influence of alcohol or other drugs while acting in any law enforcement capacity and it also says it will ensure that officers and citizens safety while eliminating any question as to whether a member's judgment was impaired when the member performed a law enforcement function. So that is the purpose of the policy, the substance abuse program. During trial and during the argument this morning a lot of emphasis was placed on an exception which appears on page 3 of General Order 3.24. This would be the general prohibitions and I would like to emphasize as Your Honor had noted these are prohibitions. They they're not intended to require the officers to do anything. They inform the officers what they are not permitted to do, what's prohibited and Prohibition D says while off-duty the officers if they have alcohol in their blood are prohibited from performing any law enforcement function or taking self-initiated police actions except in extreme emergency situations where injury to the officer or another person is likely without law I'm sure it strikes me as that this is a case of the officers violating the policy not the policy causing the constitutional well there wasn't a constitutional injury at all frankly because this was private violence but they were I guess it's undisputed acting in a law enforcement capacity when they stepped into this argument in the bar so it does strike me as a case of a officers made an error in judgment about the applicability of the exception under these circumstances correct your honor and there was substantial testimony at trial about that point the city's witnesses all of the city's witnesses had said that this was a violation of the city's policy from the very beginning of this encounter and you know one of the the factors that the mr. servin relied upon and said that they were able to take action in the situation was they believed that mr. Bohannon posed a danger or a threat to the doorman as well as the bartender however and this is a point that I'd like to make about general order 3.24 on page 2 of this there's another except that I believe has received a less emphasis but I believe it's it's far more important to this argument into this case and it defines law enforcement function as police actions to include you skip some words here using physical force capable of causing bodily injury including deadly force against any other person except when necessary to prevent injury to the officer or another person so although there is the exception under prohibition D which allows for some law circumstances mainly that injury is likely to the officer or another general order 3.24 also says that the use of force in that situation is not one of the law enforcement functions that the officers are allowed to take one of the the points that we made in our post trial motion and the court found there was a forfeiture of the response to that argument is that the mr. Rieger and mr. Serban using force in this situation they may have been justified under the Indiana Code and this would be Indiana Code section 35 41 3 2 and in that situation they're able to use force reasonable force in the event that they officers and it's important to note that that Indiana Code states it is the policy of the state of Indiana that people have the right to defend themselves and third parties from physical harm and crime the purpose of this section is to provide citizens of this state with a lawful means of carrying out this policy so the Indiana Code would allow them to intervene in that situation and use reasonable force and that's one of the the arguments that we've made as far as causation your honors it's we don't believe that we were the moving force behind the use of force in this case because both of the officers said that their reason for using force and the reason for getting involved in this incident at the at Mikey's pub was because they were trying to protect the the doorman and the bartender and you know mr. Rieger says he's trying to protect mr. servant one of the things that's been submitted to the court is the video of what occurred you know all of the city's witnesses said they reviewed that video and there was not an extreme emergency present when the officers actually approach and instead what the city's witnesses testified is it's mr. servants decision to make that approach and the way that he did that that actually escalated the situation and created a situation where there was then a danger to the people that were there at the bar mr. up church what's the what's the genesis of this Indiana Code provision is this is this in the nature of a stand-your-ground law yes your honor I believe it is in the nature of a stand-your-ground law to my recollection there was a case where an resident had used force to protect themselves I believe that's where this law might come from but it's not limited to law enforcement this is just a general self-defense permission correct your honor and I think that goes to the point that your honor made is this is really a private act of violence the city of Indianapolis throughout the trial and we understand that the policies did not allow the use of force in this situation so we we've always said that this was not our policies that actually got the ball that's really a separate question whether or not it was an act of private violence depends on whether the city concedes that their actions were taken in under color of state law and in the line of duty and I understood that even though they were off-duty there was a concession or at least it wasn't disputed that they asserted their status as law enforcement officers and I don't recall facts specifically but displayed their badges or at least announced that they were law enforcement is that right certainly honor yes that is true and that was a tactical decision at trial we understood that was going to be a disputed point the case law on the issue suggests that even when the officers are abusing their authority and even when they're violating these policies they might still be acting under color of law so that is your correct your honor that was not a point that we contested at trial however you know going back to the causation we believe that it was the Indiana Code that caused this and even if a juror and we believe there wasn't sufficient evidence that would allow a defined causation here there was absolutely no evidence that we had any notice that this general order was going to cause the use of excessive force as your honor had noted there was no evidence of prior use of force situations where excessive force was used there wasn't even any evidence that any officer had ever been off-duty and took police action in these types of situations a point that the plaintiffs counsels made is that the reporting requirements might not have allowed us to identify when officers are off-duty and drinking alcohol and taking these actions however we strongly contested that at trial and we believe that the evidence the only evidence on the issue goes against that argument specifically here we're dealing with a use of force incident and the city of Indianapolis has implemented a lot of policies that identify uses of force track those uses of force evaluate those uses of force and investigate those as sergeant McEwen testified we rely on supervisors and what an officer is required to do in the event that they use force that exceeds handcuffing a non-resisting suspect they have to call a supervisor to the scene the supervisor will come out they will talk to witnesses they talk to the about what occurred and then they prepare a report that identifies whether or not the use of force was in compliance with the general orders state law and federal law another important fact to consider is just six days before this incident took place IMPD updated its reporting requirements so since 2012 we were having supervisors conducting these investigations and preparing these reports on August 1st 2014 the officers were actually required to take the first step in this reporting requirement supervisor still responded the scene they still did the investigations but the officers were doing electronic blue team reports where they identified the reason for their use of force what force was used things such as injuries on the suspects as well as on the officers and the supervisor would add their narrative to those reports this would go up chain of command and IMPD would track those incidents and identify whether there were training and policy deficiencies so this started in 2012 it was updated August 1st 2014 the officers both testified that they went through training on that reporting requirement and during that training they received updates on general order 1.30 which again talks about the road and when they're allowed to use force and what force is reasonable in those situations general order 1.30 and this was also uncontested at trial says you know that we would evaluate the data that we had on use of force incidents and we would identify policy deficiencies and training deficiencies there's zero evidence in the record that any of those deficiencies were investigations began to the date of this incident sergeant McEwen and lieutenant McAllister also testified that the supervisor coming to the scene provided an opportunity for those supervisors to coach the officers tell them things that they could have done differently in those situations identify different ways that they could have handled the situation so we were very proactive in identifying those policy issues identifying those training issues resolving issues that we were identifying with officers and sergeant Green testified that he had no notice of any prior I believe it was significant violation of the use of force policy prior to this incident at Mikey's pub that was the only evidence that came in on that issue and we presented policy people at the trial we had people from professional standards who they get the reports they get the SIU reports they get complaints from citizens which we will accept through through telephone calls anonymous means you can come to the station we allow people to report these we also require the officers to report each other when they're using excessive force and those can be made again unanimously or I'm sorry anonymously as well as through those other reporting requirements and the chief of police will actually allow them to make a complaint as well and it's important to note the general order 1.30 also required the officers to report uses of unlawful force and that would have applied to mr. Rieger and mr. Servin so going back to the point that your honor made we believe this is a case where two individuals violated a plethora of city policies these were bad actors and we believe that the case law is very clear that liability in these situations for people who frustrate the city's policies or who failed to follow the city policies that's individual liability it's not municipal liability we believe that there was no evidence that supported the finding of deliberate indifference or causation in this case and for that reason we respectfully submit that were entitled to a judgment as a matter of law unless your honors have any questions that's all for me mr. Oakley you had some time for rebuttal yes thank you your honors first of all I would like to point to the testimony of sergeant McEwen with respect to discussing officer Servin versus officer Rieger's involvement in this situation the unlawful force occurred after Rieger's involvement and McEwen did state that so this is not just a situation where two officers were mistaken about this about the proper implications of the rules in this situation but sergeant McEwen also stated that once officer Rieger witnessed officer Servin and and mr. Bohannon involved that the policies could require and do take cause officer Rieger to then take action to stop it in order to to prevent the injury to another that this is a valid reading of 3.1 twos extreme emergency situation it is not mandatory your honor but it is it is a permissible reading and the officers would be within the city's policy under this situation additionally with respect to the reporting requirements discussed with respect to the use of force there are a lot of after-the-fact reporting requirements to track problems in this situation however we believe there is deliberate indifference by the city with respect to the alcohol and policing which we think is the first step in the gatekeeping our obligation of the city and looking at sergeant McEwen's testimony with respect to the reporting requirements there is a suggestion in that the that it's preferable for the officers to first contact an on-duty officer if possible but it's not a requirement there's also no duty for on behalf of the officers with respect to when they are filing their reports to to identify to a superior or to anyone in that report that they had actually consumed alcohol there is no program in with respect to consumption of alcohol and taking police action and indeed this was police action in that badges were displayed tactical these were used policies were in you know law enforcement action was being taken here but there's no program to identify how often that occurs after an officer has been using alcohol and there is no while the use of force and many of the other policies have an annual analysis requirement built into them with respect to the alcohol policy or potential violations thereof there's no annual analysis and all of this information came out through sergeant McEwen's testimony we believe that combining this with the with the standard of only a bodily injury and not a serious bodily injury as the sort of test for when an those police powers is very telling of a potential deliberate indifference by the city with respect to potential problems that are occurring and make it more difficult to identify any such pattern that may exist out there and beyond that I guess the you know I would rest with that your honors and I appreciate the court's time and thank you for hearing us today thank you very much thanks to